Lemus-Espinoza v. Garland

BIA
Spencer, IJ
A209 849 880/881, 209 870 259/260

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of July, two thousand twenty-four.

PRESENT:
    DENNY CHIN,
    RICHARD J. SULLIVAN,
    STEVEN J. MENASHI,
        *Circuit Judges.*
_____

GELVIS EFRAIN LEMUS-ESPINOZA, JACQUELINE VICTORIA FLORES-CORDON, JEREMY LEONARDO LEMUS-FLORES, GELVIS EFRAM LEMUS-FLORES,
        *Petitioners,*

        v.                                          **22-6165**
                                                    NAC

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
        *Respondent.*

_____

**FOR PETITIONERS:** Michael Joseph Segreto, Esq., Segreto Law Offices, P.C., Peekskill, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Sarah K. Pergolizzi, Senior Litigation Counsel; Krishana Patel, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Gelvis Efrain Lemus-Espinoza and his wife and two children, all natives and citizens of Guatemala, petition for review of a March 9, 2022, decision of the BIA affirming a May 2, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1]  *In re Lemus-Espinoza, et al.,* Nos. A 209 849 880/881, 209 870 259/260 (B.I.A. Mar. 9, 2022), *aff'g* Nos. A 209 849 880/881, 209 870 259/260 (Immigr. Ct. N.Y.C. May 2, 2019).   We assume the parties' familiarity with

---

[1] We principally refer to Lemus-Espinoza because his children were derivative beneficiaries on his asylum claim, and his wife's application was based on the same facts.

2

the underlying facts and procedural history.

We review both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review factual findings for substantial evidence, and we review questions of law and application of law to fact *de novo*. *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014).

**I. Asylum and Withholding of Removal**

To establish eligibility for asylum and withholding of removal, Lemus-Espinoza had to show past persecution or a well-founded fear or "clear probability" of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A), (B)(i); 8 C.F.R. § 1208.16(b). For either form of relief, he had to show that a protected ground was "at least one central reason for" the claimed persecution. 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); *see Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (deferring to BIA's conclusion that "one central reason" standard also applies to withholding of removal). To satisfy that burden, an "applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's" protected

3

characteristic. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005); *see also*

*Paloka*, 762 F.3d at 196–97 ("Whether the requisite nexus exists depends on the views and motives of the persecutor." (internal quotation marks omitted)).

Lemus-Espinoza alleged that people who he believed were gang members or narco-traffickers assaulted him, and then sent him letters threatening to kill him or kidnap his family if he did not pay them. The agency did not err in denying asylum and withholding of removal because, even if Lemus-Espinoza's proposed particular social group (land and livestock owners with light skin and eyes who are perceived to be wealthy) is cognizable, substantial evidence supports the agency's conclusion that he failed to demonstrate the required nexus between his past and feared harm and his membership in that group, or between the harm and his race or religion.[2] Lemus-Espinoza repeatedly testified that he believed he was targeted because his business led his abusers to believe that he would be a lucrative target for extortion, but harm committed for these general criminal purposes does not constitute persecution. *See Melgar de Torres v. Reno*, 191 F.3d 307, 314 (2d Cir. 1999) (general crime and violence in a country is not persecution

---

[2] We therefore do not reach Lemus Espinoza's arguments regarding cognizability. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

on account of a protected ground); *cf. Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA.").

Lemus-Espinoza argues that the agency overlooked probative evidence and failed to consider whether his persecutors had mixed motives, but there is no indication that this was the case. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) (explaining that we presume that the IJ has considered the full record "unless the record compellingly suggests otherwise"). Moreover, "[i]n cases where there is more than one motive for mistreatment," the applicant is still required to show that a protected ground is "at least one of the central reasons, rather than a minor reason, for why that individual is being targeted." *Garcia-Aranda v. Garland*, 53 F.4th 752, 757 (2d Cir. 2022). Here, there was scant evidence of any additional motivation. Lemus-Espinoza did not allege that his abusers ever said or wrote anything about his color (an aspect of both his race and his proposed particular social group) or religion, or that they expressed any animosity toward land or livestock owners or people with wealth. To the

5

contrary, he conceded that he was not generally treated differently because of his race or religion. *See Ucelo-Gomez*, 509 F.3d at 73 (distinguishing between harm inflicted "because of [the victim's] class status" and harm inflicted "because that's where the money is"). He testified that his mother shared his light skin and eyes and religious beliefs, and that she was once the victim of a robbery, perhaps because her belief in non-retaliation made her a soft target. But he also testified that other people in his family and community were victims of similar crimes, without alleging that they shared these characteristics. And while Lemus-Espinoza testified that his brother (who acts as caretaker for his land in his absence) was not harmed, the record is silent as to what characteristics his brother shares with him. Consistent with Lemus-Espinoza's testimony, the country conditions evidence demonstrates that gang extortion is a widespread problem in Guatemala, with gangs targeting small business owners and workers in a variety of industries. Lemus-Espinoza does not point to evidence that people with his particular characteristics are singled out for this abuse.

**II.    CAT**

CAT relief does not require a nexus to a protected ground. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Instead, a CAT applicant has the burden to

6

establish that he will "more likely than not" be subjected to "torture," *id.* § 1208.16(c)(2), which is "defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity," *id.* § 1208.18(a)(1).[3] Torture is "extreme" abuse and "does not include lesser forms of cruel, inhuman, or degrading treatment." *Id*. § 1208.18(a)(2). To establish acquiescence, the applicant must show that "the public official, prior to the activity constituting torture, [will] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it."); *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene.").

The agency did not err in concluding that Lemus-Espinoza failed to

---

[3] Citation is to the regulations at the time of the IJ's decision.

demonstrate eligibility for CAT protection. Lemus-Espinoza does not argue that he has experienced past torture, or that the people who previously assaulted and threatened him remain interested in harming him and would escalate their abuse to torture. Instead, he argues that the country conditions evidence satisfied his burden for CAT relief. [4] That evidence establishes widespread violence in Guatemala, but it does not follow that Lemus-Espinoza is more likely than not to be the victim of violence rising to the "extreme" level of torture. 8 C.F.R. § 1208.18(a)(2); *see Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (requiring "particularized evidence" beyond general country conditions to support a CAT claim). Lemus-Espinoza does not point to evidence that compels such a conclusion. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021) ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled [a] . . . finding different from that reached by the agency."); *see also Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record," an asylum applicant's fear is "speculative at best.").

---

[4] Lemus-Espinoza also refers to standards for corroboration and for granting relief following an adverse credibility determination, but those references are misplaced because the agency found his testimony credible and adequately corroborated.

8

Moreover, Lemus-Espinoza did not establish that any future harm was likely to be by or with the acquiescence of a government official. He testified that the police did not act on his report of the assault because he could not describe or identify his assailants, and that he did not believe that the police could help him because of limited resources; they were rarely in the town where he lived and worked, and they were stationed about an hour away. The country conditions evidence likewise establishes that Guatemala has insufficient resources to control violent crime. There is also evidence of government corruption. But Lemus-Espinoza did not allege that a government official was involved in his past harm or knew of a risk that this abuse would escalate to torture. *See* 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to *the activity constituting torture*, have awareness of *such activity* . . . ." (emphasis added)). We have recognized the possibility that government acquiescence may exist where some officials attempt to prevent torture, other officials are complicit, and the government is "unable to actually prevent the torture from taking place." *De La Rosa v. Holder*, 598 F.3d 103, 110–11 (2d Cir. 2010). But absent evidence that some officials had been or would be complicit in Lemus-Espinoza's harm, the record does not compel the conclusion that the

government is more likely than not to acquiesce to his torture. *See Mu Xiang Lin*, 432 F.3d at 160; *cf. Quintanilla-Mejia*, 3 F.4th at 593–94 (finding that the record did not compel the conclusion that the Salvadoran government would acquiesce to gang torture where the petitioner had not reported prior gang assaults to the government, and country conditions evidence showed that gang violence persisted—including instances involving police misconduct—but also that the government was taking steps to combat gang violence).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

<div style="margin-left: 40%;">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>